IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TERESA A. WILLIAMS,                                             PLAINTIFF

vs.                               Civil No. 4:05-cv-4083

MICHAEL J. ASTRUE,[1] Commissioner
Social Security Administration                                 DEFENDANT

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### Factual and Procedural Background:

Teresa Williams (hereinafter "Plaintiff"), brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of  the final decision of the Commissioner of the Social Security

Administration (hereinafter "Commissioner"), denying her claim for Supplemental Security Income

(SSI) under Title XVI of the Social Security Act (Act), 42 U.S.C. § 1382c(a)(3).

 The history of the administrative proceedings is contained in Defendant's  brief (Doc #11)

and will not be recited herein, except as is necessary. Plaintiff alleges that she is disabled due to back

pain from a cervical and spinal fracture and ear pain.  The issue before this Court is whether the

decision of the Commissioner is supported by substantial record evidence.

The Plaintiff's most recent administrative hearing was conducted on August 3 2004, (T. 226-

273)[2], after which the ALJ issued his written decision whereby he found the Plaintiff not disabled.

(T. 11-22).

Plaintiff then requested the Appeals Council review the ALJ's decision (T. 10).  Plaintiff did

---

[1]Michael J. Astrue became the Social Security Commissioner on February 12, 2007.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2]Reference to the Transcrpit of Preceedings will be "(T.___)."

not submit any additional medical evidence to the Appeals Council.  On February 8 2005, the Appeals Council denied review (T.7-9), thereby making the decision of the ALJ the final decision of the Commissioner.  From that decision, Plaintiff appeals (Doc. #1).

**Applicable Law:**

This courts role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *See  Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)*;  Craig v. Apfel*  212 F.3d 433, 435-436 (8th Cir. 2000).  Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion. *See Haggard v. Apfel,* 175 F.3d 591, 594 (8th Cir. 1999).  In considering  whether existing evidence is substantial, the court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *See Prosch,* 201 F.3d at 1012.  The court may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome.  *See id.*  Even if this Court might have weighed the evidence differently, the decision of the ALJ may not be reversed if there is enough evidence in the record to support the decision.  *See Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992).

It is well settled that proof of a disabling impairment must be supported by at least some objective medical evidence.  *See Marolf v. Sullivan,* 981 F.2d 976, 978 (8th Cir.1992).  The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity.  *See* 20 C.F.R. § 416.920(b).  If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

-2-

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *See* Id., § 416.920(c)*;* If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *See* Id., § 416.920(d).  If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *See* Id., § 416.920(e).  If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work experience. *See Id.*, § 404.920(f).  If so, benefits are denied; if not, benefits are awarded.

In addition, whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process.  *See* 20 C.F.R. § 416.920a(a).

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. *See* 20 C.F.R. § 416.920a(d).  Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels.  *See* 20 C.F.R. § 416.920a(e).

**Discussion:**

Plaintiff was 41 years old at the time of the ALJ's decision (T. 14). Her educational background includes two years of college, and her past work history includes employment as a

parts inspector (T. 91, 96, 107, 112, 134, 139, 155, 234-237). Plaintiff alleges that she became disabled on March 20, 2003, primarily due to back pain from an old pelvic fracture in 1987 and an old spinal fracture in 1995 (T. 76-78, 133, 149). The ear pain is related to a lone medical record with a diagnosis of bilateral otitis media (T. 193), otherwise known as an ear infection.

The ALJ found that Plaintiff had a "severe" impairment consisting of status post remote mildly displaced fracture of the C5 anterior cortex with residual pain complaints; however she did not have an impairment  or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4, for presumptive disability (T. 15, 21, Findings 2, 3).[3]

Upon determining that Plaintiff's subjective complaints of pain and limitation were not fully credible, the ALJ found that Plaintiff retained the residual functional capacity to lift/carry five pounds frequently and up to ten pounds maximum; stand/walk two hours continuously and for four hours total of an eight-hour workday; and sit for 20 minutes continuously and for four hours total of an eight-hour workday (T. 17, 19, 21, Findings 4, 5, 10).

After considering testimony of a vocational expert, the ALJ determined that the Plaintiff was unable to perform her past work as a parts inspector, but that she could perform other work existing in significant numbers in the national economy (T. 19-20, 21, Findings 6, 11). The ALJ concluded that Plaintiff was not under a "disability" as defined in the Act (T. 21, Finding 12).

It is well settled that a claimant has the ultimate burden of proving her disability by establishing that she is unable to perform substantial gainful activity for at least 12 months because of a medically determinable impairment. *See* 42 U.S.C. § 1382c(a)(3); *Thomas v. Sullivan,* 928 F.2d 255, 260 (8th Cir. 1991). The ALJ follows a five-step sequential evaluation process in determining

---

[3]References to the Findings of the ALJ will be "(Findings_____)."

whether an individual is disabled under the Act. *See* 20 C.F.R. § 416.920.  In this case, the ALJ found that Plaintiff was not disabled at step five (T. 19-20).

Judgment as to the credibility of a claimant's allegations is within the province of the ALJ, who is not required to accept as true everything that the claimant alleges. *See Moad v. Massanari,* 260 F.3d 887, 892 (8th Cir. 2001). The ALJ is required to make an express credibility determination detailing his reasons for discrediting a claimant's subjective allegations of debilitating symptoms. *See Lewis v. Barnhart,* 353 F.3d 642, 647 (8th Cir. 2003).  A claimant's subjective complaints of pain and limitation may be discounted if they are inconsistent with the evidence as a whole. *See Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998). The ALJ should assess the claimant's credibility under the criteria set forth in 20 C.F.R. § 416.929, Social Security Ruling (SSR) 96-7p, 1996 WL 374186, and *Polaski v. Heckler,* 751 F.2d 943 (8th Cir. 1984).  In the present case, the ALJ's decision reflects that he assessed the Plaintiff's credibility in accordance with the proper legal standards, including the criteria set forth in *Polaski* (T. 16-19).

 The ALJ did consider the Plaintiff's medical evidence of back and ear pain. (T. 17-18). The Plaintiff  claimed that her disability began in March 2003. (T. 76).  However, the Plaintiff has no records showing medical treatment during this relevant time period and has only minimal medical records from 1995- 2001 to support her claim of disability.

The medical records do not support Plaintiff's claims of disabling back and ear pain. *See Dixon v. Sullivan,* 905 F.2d 237, 238 (8th Cir. 1990)(finding that the medical evidence does not indicate a condition that could be expected to produce the level of pain alleged). Although Plaintiff claims that she fractured her pelvis in 1987 when a horse fell on top of her and that this past fracture currently causes her arthritic pain in her pelvic area and low back, this fracture is not documented

in any of the medical evidence (T. 17, 216, 240-243).  The medical records confirm that Plaintiff has a remote history of injuries resulting from spousal abuse, including head and neck injuries in February 1995 (T. 17, 179-180). At this time, a computed tomography (CT) head scan was normal, and a cervical CT scan showed only a mildly displaced fracture of the lower half of the C5 vertebrae without any appreciable soft tissue swelling (T. 182, 184). Dr. Contreras reported that Plaintiff exhibited normal motor strength and reflexes (T. 180). He noted that her general health was good (T. 180). Upon discharge from the hospital, the physician reported that the C5 fracture did not require any kind of stabilization or surgery and diagnosed her with only a cervical strain and a closed head injury (T. 179). The physician reported that Plaintiff was stable from a neurological standpoint, and that "she did not have much in the way of a closed head injury" (T. 179). One year later, in March 1996, Plaintiff had normal thoracic spine x-rays and normal magnetic resonance imaging (MRI) scans of the thoracic spine and brain (T. 185-187).   During a routine physical examination in January 2000, the Plaintiff made no mention of back or ear pain (T. 195). She stated she was on no prescription medications (T. 195).  On October 22, 2001, Plaintiff sought treatment for leg pain after being stepped on by a horse (T. 204). Upon examination, Plaintiff exhibited a normal gait and normal neurological findings (T. 205-206). X-ray examinations of her leg and foot were unremarkable (T. 207-208). The physician assessed her with only a contusion (T. 206).

Upon the Agency's request, Dr. Khan performed a consultative examination on July 7, 2003, to further evaluate her allegations of back and ear pain (T. 216-222). The plaintiff complained of neck pain and reported to Dr. Kahn that her disabling conditions were a previous pelvic fracture from 1987 and a spinal fracture from 1995 (T. 216, 222). She did not mention ear pain at this time (T. 216). She was not taking any medications (T. 216).  The plaintiff's  musculoskeletal examination

was entirely normal (T. 218-219). She exhibited  full range of motion of her all joints, including her cervical spine (T. 219). Dr. Kahn's neurological examination was also unremarkable (T. 220). Plaintiff exhibited no muscle weakness, muscle atrophy, or sensory abnormalities (T. 220). Her limb functioning was normal (T. 220). The physician ordered pelvic and lumbar spine x-ray examinations, which were all normal (T. 223).

Furthermore, the non-examining State Agency consultants reviewed the record and found that the plaintiff was without any severe impairments (T. 19, 224). While not bound by an opinion from a non-examining State Agency consultant, the ALJ properly considered their expert opinions weighing against Plaintiff's credibility (T. 19).

Additionally, the ALJ discounted the credibility of Plaintiff's subjective complaints of back and ear pain due to her lack of treatment (T. 18).  *See Edwards v. Barnhart,* 314 F.3d 964, 967 (8th Cir. 2001)(finding that the ALJ may properly discount a claimant's subjective complaints of pain based on the claimant's failure to obtain regular medical treatment). Plaintiff did not seek any treatment from a physician during the relevant time period.  Further, the record indicates that at no time was she taking prescription pain medications (T. 195, 216). Plaintiff testified that she only took over-the-counter medications for her pain (T. 160, 246). Her failure to obtain regular medical treatment and failure to obtain prescription pain medication is inconsistent with her allegations of disabling pain.  *See Comstock v. Chater,* 91 F.3d 1143, 1147 (8th Cir. 1996)(finding that the claimant's pain complaints were inconsistent with her failure to seek regular treatment for her back pain and use of only aspirin); *Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987).

Finally, in assessing Plaintiff's credibility, the ALJ also found that the level of her daily activities was inconsistent with her claim of total disability (T. 19).  Inconsistencies between a

claimant's daily activities and her subjective complaints diminish the credibility of those complaints. *See Forte v. Barnhart,* 377 F.3d 892, 896 (8th Cir. 2004). Plaintiff testified that she drove as often as possible and drove to her parents' house four or five times a week (T. 259). She was able to do laundry, cook, wash some dishes, cook, shop, and attend church (T. 99-100, 123-124, 158-159). On the day of the hearing, Plaintiff testified that she woke up, did some floor exercises, went out to look at a horse, and then went shopping at Wal-Mart (T. 265-266). As an avid horse rider, Plaintiff testified that as of the hearing she was still able to ride a horse, though she must "eat Motrin and Aspirin" before and afterwards (T. 266). She testified that she entered a rodeo in 2003 (the year of her alleged disability onset) and won first place in the girl's breakaway roping contest (T. 266). Plaintiff's activities are not reflective of someone who is disabled and unable to do any work. *See Gray v. Apfel,* 192 F.3d 799, 804 (8th Cir. 1999)(finding that the claimant's ability to care for himself, do household chores, drive a car short distances, and perform other miscellaneous activities was inconsistent with the level of pain alleged).

The ALJ's decision reflects that he assessed Plaintiff's residual functional capacity in accordance with pertinent regulations and rulings (T. 16–19). As recognized by the ALJ, the regulations define residual functional capacity as the most an individual can still do after considering the effects of physical and mental limitations that affect the ability to perform work-related tasks (T. 16). See 20 C.F.R. § 416.945, SSR 96-8p, 1996 WL 374184. The ALJ has the final responsibility for determining an individual's residual functional capacity based on "all the relevant medical and other evidence." *See Pearsall v. Massanari,* 274 F.3d 1211, 1218 (8th Cir. 2001); 20 C.F.R. §§ 416.945-946. While the ALJ has the responsibility to determine the residual functional capacity, it is still the claimant's burden to prove her residual functional capacity. *See Baldwin v. Barnhart, 349*

*F.3d 549, 556 (8th Cir. 2003)*. Plaintiff testified, without any support, that she cannot work because she has to lie down for her pain (T. 267-268).  However, she also testified she could stand for two hours at a time, sit for 20 minutes at a time, lift seven to eight pounds, and walk a half mile for exercise (T. 253-258).

After consideration of the medical evidence and Plaintiff's own testimony of pain and limitations and her daily activities, the ALJ determined that Plaintiff retained the ability to perform a significant range of sedentary work (T. 21, Finding 10).   The ALJ found that Plaintiff was able to lift/carry up to ten pounds maximum and five pounds frequently; stand/walk two hours at one time and for up to four hours total of an eight-hour workday; and sit for 20 minutes at one time and for up to four hours total of an eight-hour workday (Tr. 19, 21, Finding 5).    Substantial evidence supports the ALJ's residual functional capacity assessment.  *See Baldwin, 349 F.3d at 558* (finding that the ALJ properly based the residual functional capacity finding on the medical and testimonial evidence in the record).

Once the ALJ determined Plaintiff's residual functional capacity and found that she was unable to perform her past relevant work given this residual functional capacity, the ALJ appropriately relied upon vocational expert testimony at step five to find whether Plaintiff was capable to perform other jobs existing in significant numbers in the national economy (T. 19-20, 270-271).  *See Long v. Chater,* 108 F.3d 185, 188 (8th Cir. 1997).  The Eighth Circuit has held  a vocational expert's response to a properly phrased hypothetical question provides substantial evidence for the ALJ's decision.  *See Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001)*. When construing a hypothetical question, the ALJ is required to give the vocational expert limitations that reflect a claimant's true physical or mental condition. *See Hutton v. Apfel,* 175 F.3d

651, 655 (8th Cir 1999). A hypothetical question is sufficient if it contains the impairments that the ALJ accepted as true. *See Haggard v. Apfel,* 175 F.3d 591, 594 (8th Cir 1999). Because the ALJ properly discredited Plaintiff's subjective complaints, he was not required to include all of Plaintiff's alleged limitations in the hypothetical question to the vocational expert.

The ALJ asked the vocational expert to assume a hypothetical person of Plaintiff's age (41 years), education (more than a high school education), and residual functional capacity to stand or walk for two hours at a time for up to four hours in an eight-hour workday, sit for 20 minutes at a time for up to four hours in an eight-hour workday, and lift or carry ten pounds occasionally and five pounds frequently (T. 20, 270). The vocational expert testified that given these specific limitations, Plaintiff could make vocational adjustment to other work existing in significant numbers in the national economy (T. 20, 271). The vocational expert identified three particular jobs such a person could perform: a charge account clerk (157,845 jobs in the national economy and 1,710 jobs in the regional economy); a telephone quote clerk (1,598,873 jobs in the national economy and 7,540 jobs in the regional economy); and a telephone order clerk (3,734,023 jobs in the national economy and 1,800 jobs in the regional economy) (Tr. 271).

The hypothetical question and corresponding vocational expert testimony relied upon by the ALJ accurately reflected the limitations the ALJ determined to exist based upon the entire record. Accordingly, the hypothetical question and its answer provided substantial evidence to support the ALJ's finding that Plaintiff is not disabled (Tr. 20, 21, Findings 11 and 12).

**Conclusion:**

After a careful review of the entire record, I recommend that the Commissioner's decision should be affirmed, and the Plaintiff's complaint dismissed with prejudice.

-10-

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. *See* 28 U.S.C. 636(b)(1)(C).

**Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the court except on grounds of plain error or manifest injustice.**

ENTERED this  27th day of March, 2007.

/s/  Barry A. Bryant
Honorable Barry A.  Bryant
United States Magistrate Judge

-11-